# UNITED STATES DISTRICT COURT

for the

District of Nebraska

In the Matter of the Search of )
)
7 cellular phones (Devices #13-19), recovered from 3601 )
Jones Street, Apt. 335, Omaha, NE, currently in the )
custody of the Omaha Police Department, Omaha, NE )
)

Case No.    8:18MJ253

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property (identify the person or describe the property to be searched and give its location):

See Attachment A

located in the _____ District of _____ Nebraska _____ , there is now concealed (identify the person or describe the property to be seized):

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841, 846 | Distribution, PWID, Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Matthew G. Meyers, Drug Enforcement Administration
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 6-13-18 _____

_____
*Judge's signature*

City and state:  Omaha, Nebraska

Susan M. Bazis, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF THE SEARCH OF
THE FOLLOWING DEVICES WHICH ARE
CURRENTLY LOCATED AT THE DEA
OMAHA OFFICE, 2707 N 108th STREET,
OMAHA, NEBRASKA, AND THE OPD
PROPERTY UNIT, LOCATED AT OPD
HEADQUARTER, 505 SOUTH 15th
STREET, OMAHA, NEBRASKA:

BLUE ZTE CELLULAR TELEPHONE,
MODEL UNKNOWN, SN UNKNOWN

BLACK ZTE CELLULAR TELEPHONE,
MODEL UNKNOWN, SN UNKNOWN

BLACK SAMSUNG CELLULAR
TELEPHONE, MODEL SM-J327T1, IMEI
352001/09/732665/8

BLUE SAMSUNG CELLULAR
TELEPHONE, MODEL SM-J100VPP, IMEI                    AFFIDAVIT
990006007165813

SILVER GALAXY S7EDGE CELLULAR
TELEPHONE

BLACK CRICKET CELLULAR
TELEPHONE, MODEL SM-J120AZUD,
IMEI 356419078390202, S/N R58J10T3GDJ

SD CARD FOUND IN BOX IN
DOWNSTAIRS BEDROOM

HP LAPTOP COMPUTER

COMPAQ LAPTOP COMPUTER

HAND HELD AUDIO RECORDER FOUND
ON KITCHEN COUNTER

WHITE FLASH DRIVE REMOVABLE
STORAGE DEVICE

SD CARD FOUND IN BACKPACK IN
DOWNSTAIRS BEDROOM

MOTOROLA MOTO CELLULAR
TELEPHONE, MODEL UNKNOWN, SN
UNKNOWN

SAMSUNG FLIP STYLE CELLULAR
TELEPHONE, MODEL UNKNOWN, SN
UNKNOWN

GREY COOLPAD CELLULAR
TELEPHONE, MODEL UNKNOWN, SN
UNKNOWN

GREY LG CELLULAR TELEPHONE,
MODEL UNKNOWN, SN UNKNOWN

GOLD MOTOROLA CELLULAR
TELEPHONE, MODEL UNKNOWN, SN
UNKNOWN

BLUE MOTOROLA CELLULAR
TELEPHONE, MODEL UNKNOWN, SN
UNKNOWN

BLACK HTC CELLULAR TELEPHONE,
MODEL UNKNOWN, SN: FA5BPB010237

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Matthew G. Meyers, being first duly sworn, hereby depose and state as

follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property— electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      Your Affiant, Matthew G. Meyers, is a Special Agent with the Drug Enforcement Administration (DEA) and has been so employed since July of 2016.  I am currently assigned to the Omaha District Office, charged with investigating drug trafficking and money laundering violations under Titles 18 and 21 of the United States Code.  I have received 18 weeks of specialized training in Quantico, Virginia, pertaining to drug trafficking, money laundering, undercover operations and electronic and physical surveillance procedures.  While employed by the DEA, your Affiant has utilized a multitude of investigative means in order to identify and attempt to dismantle both local and national drug trafficking organizations.  Before becoming a Special Agent with the DEA, your Affiant was employed by the City of Chicago, Illinois, Police Department for approximately fourteen months.  During this time, your Affiant was a patrol officer in Area South and Area North, which encompass Chicago's most violent and highest narcotics trafficking areas.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4.      This affidavit is submitted in support of a search warrant for the following devices which are in the custody of the Drug Enforcement Administration and the Omaha Police Department in Omaha, Nebraska:

a. Blue ZTE Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 1**;

b. Black ZTE Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 2**;

c. Black Samsung Cellular Telephone, Model SM-J327T1, IMEI 352001/09/732665/8, hereinafter referred to as **Device 3**;

d. Blue Samsung Cellular Telephone, Model SM-J100VPP, IMEI 990006007165813, hereinafter referred to as **Device 4**;

e. Silver Galaxy S7Edge, Model Unknown, SN: Unknown, hereinafter referred to as **Device 5**;

f. Black Cricket Cellular Telephone, Model SM-J120AZUD, IMEI: 356419078390202, SN: R58J10T3GDJ, hereinafter referred to as **Device 6**;

g. SD Card found in box in downstairs bedroom, hereinafter referred to as **Device 7**;

h. HP Laptop, hereinafter referred to as **Device 8;**

i. Compaq Laptop, hereinafter referred to as **Device 9**;

j. Hand Held Audio Recorder, hereinafter referred to as **Device 10**;

k. White Flash Drive removable storage device, hereinafter referred to as **Device 11**;

l. SD Card found in backpack in downstairs bedroom, hereinafter referred to as **Device 12;**

m. Motorola Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 13**;

n. Samsung Flip Style Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 14**;

o.   Grey Coolpad Cellular Telephone, Model Unknown, SN: Unknown, hereinafter

referred to as **Device 15**;

p.   Grey LG Cellular Telephone, Model Unknown, SN: Unknown, hereinafter

referred to as **Device 16**;

q.   Gold Motorola Cellular Telephone, Model Unknown, SN: Unknown, hereinafter

referred to as **Device 17**;

r.   Blue Motorola Cellular Telephone, Model Unknown, SN: Unknown, hereinafter

referred to as **Device 18**;

s.   Black HTC Cellular Telephone, Model Unknown, SN: FA5BPB010237,

hereinafter referred to as **Device 19**;

5.      The applied-for warrant would authorize the forensic examination of the Devices

for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.      Since March 23, 2018, the Drug Enforcement Administration (DEA) Omaha

District Office, in a joint investigation with other federal and local law enforcement agencies in

Nebraska and Iowa, has been intercepting the wire and electronic communications over a series

of Target Telephones (TT1, TT2, and TT3) used by Jasive ZAMORA-Carrillo.  In addition to

intercepting ZAMORA-Carrillo's wire and electronic communications (with some breaks in

interception), investigators have used a wide variety of investigative techniques, including but

not limited to precision location information (PLI) from cellular telephones, surveillance, trash

pulls, vehicle tracking devices, controlled purchases/deliveries of methamphetamine, interdiction

operations, and cooperating sources and cooperating defendants.

7.     This investigation has revealed that ZAMORA-Carrillo is a multi-pound methamphetamine trafficker operating primarily in the Omaha, Nebraska, and Council Bluffs, Iowa, areas.  Additionally, investigators believe that Reiko PENUNURI and Ramon PENUNURI-Noriega have supplied multi-pound quantities of methamphetamine to ZAMORA-Carrillo.  Investigators also believe Francisco GUEVARA-Zamudio is an associate of PENUNURI and PENUNURI-Noriega and helped maintain a stash location on behalf of PENUNURI.

8.     On June 5, 2018, the DEA, OPD and SWINE Task Force executed federal search warrants for the residences of PENUNURI-Noriega, 3601 Jones Street (Apt. 335), Omaha Nebraska, and the shared residence of PENUNURI, PENUNURI-Noriega, and Francisco GUEVARA-Zamudio, 18005 Leisure Ave., Honey Creek, Iowa. The search warrant for 18005 Leisure Ave., Honey Creek, Iowa, was obtained on June 1, 2018, and signed by United States District Court Judge Stephanie Rose.  The search warrant for 3601 Jones Street (Apt. 335), Omaha Nebraska, was obtained on June 4, 2018, and was signed by Unites States Magistrate Judge Susan M. Bazis.

9.     During the search of 18005 Leisure Ave., Honey Creek, Iowa, which agents know to be associated to PENUNURI, PENUNURI-Noriega, and GUEVARA-Zamudio; agents located approximately 10.69 pounds of methamphetamine in the upstairs southwest bedroom and approximately $22,000 United States Currency (USC) in the upstairs north bedroom. Agents located numerous miscellaneous documents, driver licenses, and prescription medicine bottles, indicating that the residence was being shared by PENUNURI, PENUNURI-Noriega, and GUEVARA-Zamudio.  Additionally, agents recovered one blue ZTE cellphone (**Device 1**), one black ZTE cellphone (**Device 2**) and one black Samsung cellphone (**Device 3**) in the northwest

bedroom, which agents believe was occupied by GUEVARA-Zamudio.  Agents recovered one blue Samsung (**Device 4**) cellphone, one silver Galaxy S7Edge (**Device 5**) cellphone, one black Cricket cellphone (**Device 6**), one HP laptop (**Device 8**), one Compaq laptop (**Device 9**), one white flash drive removable data storage device (**Device 11**), and two SD cards (**Devices 7 & 12**) from the downstairs bedroom.  Agents recovered one audio recorder (**Device 10**) from the kitchen counter.  Agents believe the downstairs bedroom was occupied by Reiko PENUNURI, and the residence was rented through Airbnb by Reiko PENUNURI.

10.     During the search of PENUNURI-Noriega's residence, 3601 Jones Street, Apt. 335, Omaha, Nebraska, agents located banking documents and multiple drug ledgers. Additionally, agents recovered one Motorola cellphone (**Device 13**) from the living room, one Samsung flip style cellphone (**Device 14**), from near the entry door, and one grey Coolpad cellphone (**Device 15**), one grey LG cellphone (**Device 16**), one gold Motorola cellphone (**Device 17**), one blue Motorola cellphone (**Device 18**), and one black HTC cellphone (**Device 19**) from the bedroom.  PENUNUR-Noriega rented the apartment.

11.     Throughout this investigation, agents have intercepted wire and electronic communications from several phones utilized by PENUNURI, PENUNURI-Noriega, and GUEVARA-Zamudio.  Based on your Affiant's training and experience, your Affiant knows that operationally disciplined narcotics traffickers often use several cellphones for the purpose of evading detection by law enforcement.  Furthermore, since PENUNURI, PENUNURI-Noriega, and GUEVARA-Zamudio have no alternate sources of income (beyond trafficking methamphetamine) known to your Affiant, your Affiant believes that all of the recovered devices may contain potentially incriminating information.

12.      **Device 1, Device 2, Device 3, Device 4, Device 5, Device 6, Device 7, Device 8, Device 9, Device 10, Device 11** and **Device 12** are currently in the lawful possession of the Drug Enforcement Administration.  While the Drug Enforcement Administration might already have all necessary authority to examine the Devices, I seek these additional warrants out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.  **Device 1, Device 2, Device 3, Device 4, Device 5, Device 6, Device 7, Device 8, Device 9, Device 10, Device 11,** and **Device 12** are currently in storage in the Drug Enforcement Administration evidence vault, located at 2707 N 108th Street, Omaha, Nebraska.  In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of law enforcement.

13.      **Device 13, Device 14, Device 15, Device 16, Device 17, Device 18** and **Device 19** are currently in lawful possession of the Omaha Police Department.  While the Drug Enforcement Administration (DEA) and Omaha Police Department (OPD) might already have all necessary authority to examine the Devices, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.  **Device 13, Device 14, Device 15, Device 16, Device 17, Device 18** and **Device 19** are currently in storage at Omaha Police Department (OPD) Property Unit, located at the OPD Headquarters building, 505 South 15th Street, Omaha, Nebraska.  In my training and experience, and in consultation with OPD narcotics investigators who participated jointly in this investigation, I have been assured that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in

substantially the same state as they were when the Devices first came into the possession of law enforcement.

14.     As a result of this investigation, your Affiant knows that Reiko PENUNURI used the Internet to rent residences through Airbnb and shipped vehicles through transportation services.  Based upon your Affiant's training and experience, your Affiant knows that drug traffickers often use vehicles with hidden compartments to transport narcotics and proceeds derived from narcotics transactions, and that they often employ transportation services online to transport the vehicles rather than risk law enforcement interdiction.

## **TECHNICAL TERMS**

15.     Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing

dates, appointments, and other information on personal calendars; and accessing
and downloading information from the Internet.  Wireless telephones may also
include global positioning system ("GPS") technology for determining the
location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital
picture files, rather than by using photographic film.  Digital cameras use a
variety of fixed and removable storage media to store their recorded images.
Images can usually be retrieved by connecting the camera to a computer or by
connecting the removable storage medium to a separate reader.  Removable
storage media include various types of flash memory cards or miniature hard
drives.  Most digital cameras also include a screen for viewing the stored images.
This storage media can contain any digital data, including data unrelated to
photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a
handheld digital storage device designed primarily to store and play audio, video,
or photographic files.  However, a portable media player can also store other
digital data.  Some portable media players can use removable storage media.
Removable storage media include various types of flash memory cards or
miniature hard drives.  This removable storage media can also store any digital
data.  Depending on the model, a portable media player may have the ability to
store very large amounts of electronic data and may offer additional features such
as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets,

and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

g.  Memory Card: A memory card is utilized in many different types of devices (such as cellular phones, PDAs, GPS Units etc). These memory cards can contain any type of digital data to include pictures, keystroke information, telephone numbers, contact lists, calendars etc.  These items in and of themselves are portable and may be used in multiple devices.

a.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

b.   Internet: The Internet is a global network of computers and other electronic

devices that communicate with each other.  Due to the structure of the Internet,

connections between devices on the Internet often cross state and international

borders, even when the devices communicating with each other are in the same

state.

16.   Based on my training, experience, and research, I know that the **Devices 1, 2, 3, 4,**

**5, 6, 13, 14, 15, 16, 17, 18, and 19** typically have capabilities that allow them to serve as

wireless telephones, digital cameras, portable media player, GPS navigation device, and PDAs.  I

further know that **Devices 7, 11, and 12** serve as Memory Cards.  I further know that Devices **8**

**and 9** have capabilities that allow them to access the Internet.  In my training and experience,

examining data stored on devices of this type can uncover, among other things, evidence that

reveals or suggests who possessed or used the device.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

17.   Based on my knowledge, training, and experience, I know that electronic devices

can store information for long periods of time.  Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device.  This information can

sometimes be recovered with forensics tools.

18.   There is probable cause to believe that things that were once stored on **Devices 8**

**and 9** may still be stored there, at least for the following reasons:

a.   Based on my knowledge, training, and experience, I know that computer

files or remnants of such files can be recovered months or even years after they have been

downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files

downloaded to a storage medium can be stored for years at little or no cost.  Even when files

have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.      Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.      Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

19.      *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). With regard to **Devices 8 and 9**, virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.  Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.   The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review

team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f.  I know that when an individual uses an electronic device in furtherance of methamphetamine distribution or in collecting proceeds derived from methamphetamine distribution, , the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.  The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

20.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Devices consistent with the warrant.  The examination may require authorities to employ techniques,

including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

21.     *Manner of execution.*  Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

22.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

23.     Based upon my experience and training, I know that drug traffickers commonly possess and use digital devices such as cellular telephones in connection with their drug trafficking activities.  These devices typically store relevant information concerning their drug activities and drug associates including addresses and telephone numbers, text messages, multi-media messages, the times and dates of incoming and outgoing calls and messages, and electronic files such as photographs, and videos.

24.     I know from my training and experience that members of Drug Trafficking Organizations (DTO) commonly communicate with cellular telephones, to include text messaging and multi-media messaging.  I also know that members of DTO's commonly store phone numbers for their drug suppliers, co-conspirators and customers in their cell phones. The

numbers stored in the target telephones and phone logs could have significance to ongoing

narcotics investigations, as well as possible connections to potential targets in this case.

25.     In addition, I know from my training and experience that because drug dealing is

a very mobile business, it is necessary for persons involved in the drug business to use electronic

communication devices such as cellular telephones so that they can conduct their drug business

at virtually any time without unnecessary delay.  I know that these devices are capable of storing

information such as phone numbers and/or coded messages which may lead to the identity of

codefendants, coconspirators, and/or sources of supply.  Cellular telephones, in addition to being

communication devices, are also storage devices for data.  Data electronically stored inside

cellular telephones include telephone numbers of associates, logs of the date and time that

individual calls were made, voice and electronic messages from associates and photographs or

videos of the primary user, associates, and co-conspirators.  The data inside cellular telephones is

evidence of drug trafficking, demonstrates true ownership and control of the telephones, which

are often registered to another person, and can be effectively used to corroborate the statements

of witnesses.

26.     In addition, based on my training and experience, drug traffickers often have

photographs or videos in cellular phones, of themselves, their coconspirators and property/assets

purchased with drug proceeds.  These photographs and videos often contain evidence of drug

trafficking and evidence of the use of cash proceeds to make purchases of various assets, such as

vehicles or jewelry.   Further, these photographs and videos are useful to identify sources of

supply, customers, associates, and co-conspirators of the primary user of the telephone as well as

vehicles used or owned, places of operation or storage, and other evidence of drug trafficking

activities.

27.     Based on the foregoing, there is probable cause to believe the data and information electronically stored within the Devices such as but not limited to details of past telephone contacts and records of calls made and received, text messages, multi-media messages, voice mails, internet browser history, types, amounts and prices of drugs trafficked, as well as dates, places and amounts of specific transactions, any information related to the sources of drugs (including names, addresses, phone numbers, or any other identifying information), any information related to schedule or travel, including geographic location information, photographs, videos, and audio files, and evidence of user attribution such as logs, phonebooks, and saved usernames and passwords, contain evidence of the commission of the above-listed violations, evidence concerning the fruits of the above described criminal activities, and/or evidence concerning the means of committing a violation of the above-listed statutes.  Accordingly, I request authority to allow technicians to search the Devices for evidence such as that described above.

Respectfully submitted,

Matthew G. Meyers
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me
on June 13, 2018:

SUSAN M. BAZIS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

1.    The property to be searched consists of the Devices listed below.  All Devices were recovered on June 5, 2018, from 3601 Jones Street, Apt. 335, and are currently in the custody of the Omaha Police Department Property Unit.

      a.  Motorola Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 13**;

      b.  Samsung Flip Style Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 14**;

      c.  Grey Coolpad Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 15**;

      d.  Grey LG Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 16**;

      e.  Gold Motorola Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 17**;

      f.  Blue Motorola Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 18**;

      g.  Black HTC Cellular Telephone, Model Unknown, SN: FA5BPB010237, hereinafter referred to as **Device 19**

2.    This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

The items to be seized from **Device 13, 14, 15, 16, 17, 18, and 19**:

1.      All data and records contained in the Devices, which constitute fruits, instrumentalities, and evidence of possession with intent to distribute and distribution of a controlled substance in violation 21 U.S.C. § 841(a)(1) and/or conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846, including:

a.  Data, including but not limited to, telephone numbers of the accessed device, telephone numbers for incoming calls and SMS and MMS messages' dialed outgoing telephone numbers' numeric messages sent or received; voice mail and other verbal messages sent or received; address and telephone/pager number listings; contacts; electronically composed memorandum; any time and/or date markings and/or calendar format organization of /such data; or any other data related to drug-trafficking or money laundering; including photographs, videos, and audio recordings; which may be stored, received, or sent, contained in the electronic memory of the previously described device;  lists of customers; and related identifying information;

b.  Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

c.  Any information related to sources of narcotic drugs (including names, addresses, phone numbers, or any other identifying information);

1

    d.  Any information recording Ramon PENUNURI-Noriega's and others known and unknown schedule or travel;

    e.  Bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned **Devices 13, 14, 15, 16, 17, 18, and 19** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.    Records and other data evidencing the use of the Internet Protocol address utilized by to this device to communicate with criminal co-conspirators, or unwitting individuals or institutions which were used to facilitate drug trafficking or money laundering crimes, to include:

    a.  Records of Internet Protocol addresses used;

    b.  Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4.    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form, and by whatever means they may have been created or stored, including any form of electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

District of Nebraska

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.   8:18MJ253 |
| 7 cellular phones (Devices #13-19) recovered from 3601 Jones Street, Apt 335, Omaha, NE, currently in the custody of the Omaha Police Department, Omaha, NE | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____Nebraska_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____June 26, 2018_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Susan M. Bazis, U.S. Magistrate Judge_____ .
                                                                                      *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    _____6-13-18 at 4:09 p.m._____       *Susan M Bazis*
                                                                                      *Judge's signature*

City and state:    _____Omaha, Nebraska_____       Susan M. Bazis, United States Magistrate Judge
                                                                                      *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.:<br>    8:18MJ253 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|
|       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br><br>Date: _____<br><br>                                       _____<br>                                                  *Executing officer's signature*<br><br>                                         _____<br>                                                     *Printed name and title* |

## ATTACHMENT A

1.      The property to be searched consists of the Devices listed below.  All Devices were recovered on June 5, 2018, from 3601 Jones Street, Apt. 335, and are currently in the custody of the Omaha Police Department Property Unit.

     a.  Motorola Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 13**;

     b.  Samsung Flip Style Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 14**;

     c.  Grey Coolpad Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 15**;

     d.  Grey LG Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 16**;

     e.  Gold Motorola Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 17**;

     f.  Blue Motorola Cellular Telephone, Model Unknown, SN: Unknown, hereinafter referred to as **Device 18**;

     g.  Black HTC Cellular Telephone, Model Unknown, SN: FA5BPB010237, hereinafter referred to as **Device 19**

2.      This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

## **ATTACHMENT B**

The items to be seized from **Device 13, 14, 15, 16, 17, 18, and 19**:

1.      All data and records contained in the Devices, which constitute fruits, instrumentalities, and evidence of possession with intent to distribute and distribution of a controlled substance in violation 21 U.S.C. § 841(a)(1) and/or conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. § 846, including:

   a.   Data, including but not limited to, telephone numbers of the accessed device, telephone numbers for incoming calls and SMS and MMS messages' dialed outgoing telephone numbers' numeric messages sent or received; voice mail and other verbal messages sent or received; address and telephone/pager number listings; contacts; electronically composed memorandum; any time and/or date markings and/or calendar format organization of /such data; or any other data related to drug-trafficking or money laundering; including photographs, videos, and audio recordings; which may be stored, received, or sent, contained in the electronic memory of the previously described device;  lists of customers; and related identifying information;

   b.   Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c.   Any information related to sources of narcotic drugs (including names, addresses, phone numbers, or any other identifying information);

1

    d.   Any information recording Ramon PENUNURI-Noriega's and others known and unknown schedule or travel;

    e.   Bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned **Devices 13, 14, 15, 16, 17, 18, and 19** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.    Records and other data evidencing the use of the Internet Protocol address utilized by to this device to communicate with criminal co-conspirators, or unwitting individuals or institutions which were used to facilitate drug trafficking or money laundering crimes, to include:

    a.   Records of Internet Protocol addresses used;

    b.   Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4.    As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form, and by whatever means they may have been created or stored, including any form of electronic storage (such as flash memory or other media that can store data) and any photographic form.

2